# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

OLIN WOOTEN, OLIN WOOTEN : CIVIL ACTION
TRANSPORT COMPANY, INC.,
and ATLANTIC COAST :
CARRIERS, INC.,
:
    Plaintiffs,
:

    v.
:

ALTAMAHA BANK AND TRUST,
AMANDA LETICIA VARNADORE, :
ADORNA L. POWELL, and
KENNETH D. McLEOD, :

    Defendants. : NO. CV203-100

## O R D E R

Plaintiffs, Olin Wooten, Olin Wooten Transport Company, Inc., and Atlantic Coast Carriers, Inc. ("Atlantic Carriers"), filed this action against the above-named Defendants, alleging a private civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, as well as numerous state law claims. On March 4, 2005, the Court, finding that Plaintiffs lacked standing to assert the

instant claims, granted Defendant, Altamaha Bank and Trust's ("Altamaha Bank"), summary judgment motion.[1]

Upon reconsideration, the Court granted Atlantic Carriers' motion seeking reconsideration of the portion of the March 4, 2005, Order dismissing Atlantic Carriers' claims against Altamaha Bank for instruments negotiated on the Atlantic Carriers' account from December 10, 1999, through June 7, 2001. The Court will now address the remaining arguments asserted in Altamaha Bank's summary judgment motion. For the following reasons, Altamaha Bank's motion seeking summary judgment of Atlantic Carriers' claims will be **GRANTED IN PART** and **DENIED IN PART**.

**FACTS**

Atlantic Carriers, the successor interstate trucking company to Wooten Transport, opened a corporate account with Altamaha Bank on December 10, 1999. Atlantic Carriers contends that its employees, Defendants, Varnadore and Powell, forged a large number of checks on its corporate accounts at Altamaha Bank and the Bank of Hazelhurst from June of 1997, through June 7, 2001.

---

[1] The only remaining claims against Altamaha Bank are conversion and negligence. (See Doc. No. 94.)

2

By Order dated March 4, 2005, the Court granted summary judgment in favor of Altamaha Bank, thereby dismissing Plaintiffs' claims against that Defendant. The Court found that Atlantic Carriers lacked standing to assert the instant claims against Altamaha Bank because Wooten Transport failed to disclose the potential claims in its bankruptcy proceedings. Because the Court found that Atlantic Carriers lacked standing to assert the claims, it did not address Altamaha Bank's remaining arguments in support of its summary judgment motion.

Atlantic Carriers timely filed a motion requesting, *inter alia*, that the Court reconsider its March 4, 2005, Order. On May 4, 2005, the Court granted Atlantic Carriers' motion seeking reconsideration of the portion of the March 4, 2005, Order dismissing Atlantic Carriers' claims against Altamaha Bank for instruments negotiated on the Atlantic Carriers' account from December 10, 1999, through June 7, 2001.

In granting the motion, the Court concluded that, to the extent that Atlantic Carriers was asserting claims as the successor in interest to Wooten Transport, it was precluded from asserting its claims for the reasons indicated in the Court's March 4, 2005, Order. To the extent, however, that Atlantic Carriers was asserting a claim against Altamaha Bank

3

AO 72A
(Rev. 8/82)

for damages resulting from instruments negotiated on the Atlantic Carriers' account from December 10, 1999, the date the account was opened, until June 7, 2001, the date the embezzlement was discovered, Wooten Transport's failure to disclose the instant claims in its bankruptcy proceeding had no effect. The Court will now entertain Altamaha Bank's remaining arguments in support of its summary judgment motion.

**DISCUSSION**

Summary judgment is appropriate when no genuine issues remain and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). In so doing, all facts and reasonable inferences are to be construed in favor of the non-moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962); Sweat v. Miller Brewing Co., 708 F.2d 655, 656 (11th Cir. 1983). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

AO 72A
(Rev. 8/82)

Altamaha Bank contends that, even were the Court to conclude that Altamaha Bank has standing and is not prohibited from asserting the instant claims by judicial estoppel,[2] it is entitled to partial summary judgment. First, Altamaha Bank contends that Plaintiff's recovery is limited by O.C.G.A. § 11-4-406. Altamaha Bank additionally contends that it is not liable to Plaintiff for any cashiers checks cashed by Altamaha Bank employees. Finally, Altamaha Bank contends that it is not liable for payment of any checks drawn on the Bank of Hazelhurst account.

## I. O.C.G.A. § 11-4-406

Altamaha Bank contends that Atlantic Carriers' recovery is limited by the notice provisions of Georgia's Commercial Code. Generally, a drawee bank is strictly liable to its customer for payment of a negotiable instrument containing a forged signature or unauthorized endorsement. Trammell v. Farmers & Merchants Bank, 170 Ga. App. 347, 347-48, 317 S.E.2d 323, 324 (1984); Perini Corp. V. First Nat'l Bank of Habersham County,

---

[2] Atlantic Carriers' claims are not precluded by judicial estoppel for the same reason the Court concluded Atlantic Carriers has standing — Wooten Transport's failure to disclose the instant claims in its bankruptcy proceeding has no effect on the claims asserted by Atlantic Carriers for negotiable instruments presented on the Atlantic Carriers' account.

5

553 F.2d 398 (5th Cir. 1977)[3]. If a bank sends or makes available to the customer a statement of account, however, the customer "must exercise reasonable promptness" to discover and notify the bank of any forged signatures and unauthorized endorsements. O.C.G.A. § 11-4-406(c); First Citizens Bank of Clayton County v. All-Lift of Ga., Inc., 251 Ga. App. 484, 487, 555 S.E.2d 1, 4 (2001) (quoting Eason Publications v. NationsBank of Ga., 726, 727-28(1), 485 S.E.2d 899 (1995)). The customer's failure to do so may, in certain circumstances, relieve the bank of liability for any forged instruments. O.C.G.A. §§ 11-4-406(d) and (f); Eason Publications, Inc., 217 Ga. App. at 728, 458 S.E.2d at 901.

O.C.G.A. § 11-4-406 places an absolute time limit on a customer's claim against a bank arising out of payment of items bearing an unauthorized signature on the face of the item or an unauthorized endorsement on the back of the item, *without regard to any allegations of negligence*, Decatur Fed. Sav. & Loan Ass'n v. Litsky, 207 Ga. App. 752, 429 S.E.2d 300 (1993) (emphasis added):

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted all decisions by the Fifth Circuit Court of Appeals issued prior to October 1, 1981, as binding precedent on this Court.

6

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within 60 days after the statement or items are made available to the customer (subsection (a) of this Code section) discover and report the customer's unauthorized signature on or any alteration on the face of the item or who does not within one year from that time discover and report any unauthorized indorsement or alteration on the back of the item is precluded from asserting against the bank the unauthorized signature, indorsement, or alteration.

O.C.G.A. § 11-4-406(f). Operating similarly to a statute of limitations, this requirement protects a bank from facing suit over forgeries for an indefinite period of time. Eason Publications, Inc. v. NationsBank of Georgia, 217 Ga. App. 726, 458 S.E.2d 899 (1995).

In order to avail itself of the protection afforded under this code section, Altamaha Bank must demonstrate that it complied with the requirements in O.C.G.A. §§ 11-4-406(a) and (b) that it makes the bank statement and items paid in good faith available to the customer. See Decatur Fed. Sav. & Loan Ass'n, 207 Ga. App. at 753, 429 S.E.2d at 302. In addition to making available a statement of account, a bank:

> shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment.

7

O.C.G.A. § 11-4-406(a).

Atlantic Carriers does not dispute that monthly statements were sent. Instead, it contends that O.C.G.A. § 11-4-406 does not limit its recovery because Altamaha Bank's policy of providing only copies of the face of checks does not satisfy the requirement that the bank make available the items paid and that Altamaha Bank failed to act in good faith. Neither of these arguments has merit.

A bank is required to provide sufficient information for the customer to identify the items paid. Id. In lieu of providing the customer with the original paid items, a bank may satisfy this requirement by either supplying the customer with an image copy of the paid items or a statement of account complying with the "safe harbor rule." See O.C.G.A. § 11-4-406, uniform Code Comment 1. Under the safe harbor rule, the statement "provides sufficient information if the item is described by item number, amount, and date of payment." When the bank provides this information, it is not required to return the paid items. Id. The Court concludes that Altamaha Bank satisfied the requirements of O.C.G.A. § 11-4-406(a) by providing the monthly statement of account to Atlantic Carriers, as well as the imaged copies of the paid items.

AO 72A
(Rev. 8/82)

Atlantic Carriers' contention that O.C.G.A. § 11-4-406 does not limit its recovery because Altamaha Bank failed to act in good faith is similarly without merit. "Good faith" is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." O.C.G.A. § 11-3-103(a)(4). "[Good faith] is concerned with the fairness of conduct rather than the care with which an act is performed." O.C.G.A. § 11-3-103 Uniform Commercial Code Comment 4.

Atlantic Carriers argues that the bank exhibited a lack of good faith by failing to check adequately the signatures on each transaction and by violating its own policies. These actions, however, do not constitute evidence of the bank's failure to pay the forged checks with "honesty in fact." Thus, Atlantic Carriers' recovery against Altamaha Bank is limited to those forged checks which Atlantic Carriers discovered and reported within the 60-day limit and unauthorized endorsements discovered and reported within the one year limit of O.C.G.A. § 11-4-406(f).

## II. Cashiers Checks Cashed at Altamaha Bank

Altamaha Bank also contends that it is not liable to Plaintiff for any cashiers checks that were cashed by Altamaha

9

Bank employees because the forged endorsements converted the checks to bearer paper. It is well established under Georgia law that unless an endorsement of the payee's name on a check is genuine, either as having been made by the payee or by the payee's authorized agent, the endorsement does not pass title to the check. Buena Vista Loan & Sav. Bank v. Stockdale, 56 Ga. App. 168, 192 S.E. 246, 247 (1937); Citizen & S. Nat'l Bank v. N.Y. Cas. Co., 84 Ga. App. 47, 48-49, 65 S.E.2d 461, 462, (1951) ("The evidence conclusively shows that the indorsement of her name was a forgery, and as such it was wholly ineffective to pass any title to or to confer any interest in the check.") (citations omitted).

Altamaha Bank's reliance on the decision in Gerber & Gerber, P.C. v. Regions Bank, 266 Ga. App. 8 (2004) is misplaced as Gerber is readily distinguishable from the instant case. In Gerber, an employee stole 29 cashiers checks from her employer which the payees had endorsed in blank. After endorsing the checks herself, the employee deposited the checks into her personal account at defendant bank. In affirming the trial court's granting of summary judgment in favor of the defendant, the court reasoned that the bank did not convert these checks because the checks became bearer paper when the

payees endorsed the checks, and the employee, as holder of the checks, was entitled to enforce the instruments.

Altamaha Bank argues that it is in the same position as the defendant bank in the Gerber case. According to Altamaha Bank, once Varnadore and Powell forged Wooten's signature as an endorsement, the cashiers checks became bearer paper and acceptance from Varnadore or Powell was proper. The difference, however, is that in the instant case, unlike in Gerber, the endorsements on the cashiers checks were unauthorized forgeries.

### III. Checks Drawn on the Bank of Hazelhurst Account

Finally, Altamaha Bank argues that Atlantic Carriers is precluded from recovery for any checks drawn on the Bank of Hazelhurst account because Plaintiffs entered into a settlement agreement with the Bank of Hazelhurst and, thus, have been compensated for any losses attributed to the forged Bank of Hazelhurst checks. While O.C.G.A. § 9-2-4 authorizes a plaintiff to pursue any number of consistent or inconsistent remedies, a plaintiff pursuing consistent remedies is not entitled to more than one satisfaction. St. Paul Fire & Marine Ins. Co. v. Clark, 255 Ga. App. 14, 17, 566 S.E.2d 2, 6-7

AO 72A
(Rev. 8/82)

(2002). Accordingly, Atlantic Carriers is barred from recovering from both the Bank of Hazelhurst and the Altamaha Bank for the same checks.

It is not clear to the Court, however, that Atlantic Carriers is attempting to recover from Altamaha Bank for checks drawn on Atlantic Carriers' account at the Bank of Hazelhurst. Atlantic Carriers alleges that Altamaha Bank negligently negotiated checks with unauthorized and/or forged signatures and endorsements drawn on Atlantic Carriers' account at Altamaha Bank. Atlantic Carriers further alleges that Altamaha Bank negligently paid cashiers checks containing unauthorized endorsements. Nowhere does Atlantic Carriers allege that Altamaha Bank cashed any checks drawn on the Bank of Hazelhurst account. Nevertheless, recovery from both the Bank of Hazelhurst and Altamaha Bank for the same checks would clearly amount to an impermissible double recovery. In such case, Altamaha Bank would be entitled to a set-off in the amount Atlantic Carriers received in settlement from the Bank of Hazelhurst.

AO 72A
(Rev. 8/82)

## CONCLUSION

The Court has read and considered the positions of all parties to this action. For the reasons set forth above, Altamaha Bank's Motion for Summary Judgment (Doc. No. 153) is **GRANTED IN PART** and **DENIED IN PART**.

Altamaha Bank's motion seeking summary judgment for any forged checks discovered and reported more than 60 days after the bank statement containing the paid item was sent and for any unauthorized endorsements discovered and reported more than one year after the bank statement containing the paid item was sent is **GRANTED**. Altamaha Bank's motion seeking a set-off in the amount Atlantic Carriers received in settlement from the Bank of Hazelhurst from any recovery is **GRANTED**. Altamaha Bank's motion seeking summary judgment in its favor for any cashiers checks cashed at Altamaha Bank is **DENIED**.

**SO ORDERED** this 23 day of May, 2005.

JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)